Judge Underwood
delivered the opinion of the court.
William Richards recovered a judgment against the administrator of John Porter, deceased; and being unable to make the amount by execution, he filed his bill against the heirs and devi-sees of Porter, to reach certain property, descended or conveyed, or devised to them.
Richards departed this life in the state of Virginia, leaving a will, duly proved and recorded, in that state, by the codicil to which, dated 25th March, 1816, Thomas Humphries, and'JohnW. Green, were appointed his executors. Green refused the execu-torship; and Humphries qualified in May, 1817.
In November, 1820, William Markham, by an order of the Bourbon county court, was appointed curator, to collect and preserve the estate of Richards, “until the executor of the said Richards shall appear, to attend thereto.” The order states, as a reason for appointing a curator, “that it appeared, that there *304 was in this state, some of the estate of William Richards, which ought to be attended to.”
On the 28th November, 1820, by an order of the circuit court, the suit was directed to abate, by the complainant’s death; and in the same order, it was directed to be revived, in the name of William Markham, without stating any reason for so doing, or suggesting that he was curator.
In November, 1824, another order of court was made, abating the suit, as to Richards, on account of his death; and directing the same to be revived in the name of William L. Richards, administrator bonis non, of said William Richards.
In November, 1825, the present plaintiffs in error, filed a demurrer to the order of revivor, in the name of Markham, and. upon argument ofjhe demurrer, the court pronounced the law to be for the defend-' ants, and ordered the suit to abate.
At the May term, 1826, the court amended the order of the preceeding November term, and directed an abatement of the suit in the name' of Markham. Before the court had ordered an abatement ’of the suit, in Markham’s name,-as aforesaid, to wit: On the 18'th January, 1823, Robert Trimble, as guardian for Lucretia, (who since intermarried with Feemster) John, and Austin Porter, who were infant defendants to the bill, and a part of the children of John Porter, deceased, paid to Markham' $382 80 cents, on account of the judgment, which William Richards had obtained in his lifetime, against John Porter’s administrator.
In April, 1826, Feemster and wife, John Porter, and Austin Porter, instated an action of assumpsit, against Markham, to recover from him the money thus paid, by Trimble. The court, after the plaintiffs had closed their evidence, instructed the jury to find, as in case of a non-suit; and the jury found accordingly, and the court rendered judgment for the defendant, to reverse which the plaintiffs prosecute their writ of error.
The foregoing facts appeared in proof. They were substantially set out in one count of the declaration. *305 The declaration also contained other counts, which charge an undertaking ón the part of the defendant-, to pay upon request, for and in consideration of mó-iney advanced to him, by the plaintiffs. These counts, although not very formal,.nevertheless, contain a good cause of action. We are of opinion, that there was not such a variance between the allegata et probata, as authorized the court to instruct, asín case of non-Buit.
The only question of importance, therefore, which is presented for consideration, arises upon the facts detailed. Do they, in law, create an assumpsit, on the part of Markhám, to pay the plaintiffs the atoount •received by him, from Trimble? If they do, the instruction ought not to have been given. The solution of the question turns, in our opinion, upon the authority which Markham possessed, to receive the money. If, at the time it was paid to him,-he was legally authorized to receive it, in discharge of so much of the judgment, in favor of Richards against Porter’^ administrator, then he cannot be coerced to return it to the plaintiffs, lie is accountable for it to those, who are entitled to that,judgment, and to them only. The judgment was the best of considerations, to justify the reception of the money; and,as the payment of the judgment, by Trimble, would, and ought to induce a relaxation of all legal means, .to coerce payment 'from the administrator, heirs, and devisees, of Porter, it might, and probably would, produce injury, to compel a return of the money in toost cases, similarly situated, and to start proceedings anew, against Porter’s representatives. Such a consequence, in the equitable action of assumpsit, could not be tolerated, where the party receiving the money, Was entitled to it, and when the injury was to fall on him. But if the money'has been paid by Trimble, and received by Markham, under a mutual mistake, then it should be restored; and the law will afford a remedy to effect that, which if hot done, would constitute so palpable an injury to the plaintiffs, as fhe loss of more than $300, without the semblance of bfenefit, superinduced by the error of their guardian, ít is true, that if Trimble has paid away the money *306 of bis wards, without being required to do so, he iá responsible to them for thus acting; and they might compel him to account for any misapplication of their funds. But where it is perfectly obvious, that the payment made by Trimble to Markham, was in the Capacity of agent, by the guardian, for and in behalf of his wards, we perceive nothing erroneous in per-rtiiting them to proceed upon the act of the guardian, as their act. Yielding to them an option to go against either, instead of one, is a doctrine which cannot be prejudicial to wards.
f. Dig. 526, power of county courts to appoint curators. Dusy of curator.
Regarding the money paid to Markham, as the money of the plaintiffs, and considering the institution of their suit against him, as evidence of an election, to sanction the act of Trimble, in paying the money, and to look to Markham for the return of it, we shall inquire whether Markham had any right to deceive it. His right, if he had any, depends on the order appointing him curator; and the order reviving the suit in his name. It does ndt rest on any decree in his favor, for no such decree was ever pronounced; although, from the evidence, it may be inferred that Trimble, in paying the money, acted under the impression that there was such a decree.
County courts have authority to appoint curators “during any contest about a Will, or in the absence of executors, or whenever the court, from any other cause, shall judge it convenient.” I. Dig. 526. The duty of the curator, so far as fhe statute prescribes it, consists, in collecting, and preserving the estate-; making an inventory thereof; keeping it safely, and delivering it when required, to the executor or administrator. From the provisions of the statute, the curator is regarded as a mere stockholder. There is no authority given him, to administer upon the.estate, and his whole power is limited by the object of his appointment. He may perform all acts necessary to preserve the property, and to make an inventory; but any thing more is not warranted, we conceive, either by the letter or spirit of the statute. We do not admit, thathe has the rightor the power, to collect money due on choses in action, by suit. It is his duty to preserve'all notes and papers, belonging to thedecea- *307 sed, which come to his hands, and to pass them- over to the executor or administrator, when requiredi
The provision of the act of assembly, authorizing county courts, to order the sheriff to. proceed with the administration of estates, under certain circumstances, (I. Dig. 533,) indicates very clearly, that it never was the intention of the legislature, to vest curators with more power, than was necessary to preserve the estate. We do not admit that the appointment of Markham, as curator, was a void act, because the will of Richards had been duly recorded, and one of his executors had qualified in Virginia, before Markham’s appointment, as is contended by the counsel for the plaintiffs.
On the contrary, we think that his appointment was valid, for all the purposes contemplated by the statute; but we do not perceive any right, resulting from thp appointment, which could justify Markham in becoming the representative of Richards, in the prosecution of the suit, against the representatives of Porter. The order of court, reviving the suit in the name of Markham, was therefore, erroneous. It was wrong for two reasons.,
1st. Because, Markham’s character as curator, gave him no right.
2d. If it did, the revivor should, have been by bill, with proper allegations, to which the defendant? might have filed answers, denying the facts; and not by the exparte order of court.
The 10th. section of the act of 1800, I. Dig. 54,. does not embrace the case, and if there be any other act, authorizing a revivor in the manner here attempted, it has escaped our attention. The circuit court endeavored to correct the error, but not until the money had been paid to Markham. We do not perceive any reason why he should be permitted to hold money paid him, not under a decree; but whilst he-was erroneously the complainant, in .the place of Richards’s executor or administrator*.
If A has executed anote to B, and'he dies, and G, in the assumed character of executor or administrator, sues A for the money, and A pays it before trial, *308 believing C entitled to it; but afterwards discovers was deceived, shall he have no retaedy against C? ' in such a case the law most certainly implies an assumpsit on C’s part (o repay A. The payment to C could not discharge A from the demand in behalf of B’s rightful representative. If A permitted C to get a judgment, and paid the money in pursuance of the judgment, he might be without remedy until the reversal of the judgment.
The principles of this case supposed, seem to us applicable to the present controversy. Markham, without any decree in his favor, has obtained money to which he had no right. There is no consideration apparent upon the record, which will justify his holding it. Law and justice unite in saying, that he must pay it over to those entitled to it. The representatives of Richards are not bound by Markham’s acts, and it would seem that an individual, claiming to be administrator de bonis non, is endeavoving to collect the money from Porter’s representatives.
Under the view of the subject we have taken, it Is our opinion, that the money may be regarded as belonging to the plaintiffs; and that it has-been paid to the defendants through mistake, without any consideration passing from him. That the law implies an assumpsit in such a case, to account for the money to the right owner, is a proposition so clear, that we deem it useless to cite authority in support of it.
We therefore, think that the circuit court erred in instructing the jury to find as in case of a non-suit.
It follows, that the court should have granted the plaintiffs a new trial, and that the court erred in refusing it.
Upon the return of the case, we will not say that Markham may not defend himself, by showing that the judgment in favor of Richards, remains in full force; that the plaintiffs are responsible for its amount; and that he has paid over the money in satisfaction thereof, which he received of Trimble. It will be time enough to decide these matters, when the-facts are fully developed.
Feemster, for plaintiffs; Hanson, for defendants.
Judgment of the circuit court reversed, and cause remanded for a new trial.
Plaintiffs in error, must recover costs.